

O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

File Number:

**Daniel M. Petrocelli**
D: +1 310 246 6850
dpetrocelli@omm.com

November 11, 2022

The Honorable Nina R. Morrison
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Marvel Characters, Inc. v. Solo et al*., No. 1:21-cv-05316-NM-TAM

Dear Judge Morrison:

Plaintiff Marvel Characters, Inc. ("MCI") respectfully requests a pre-motion conference to discuss MCI's anticipated motion for summary judgment on Defendants Nanci Solo and Erik Colan's ("Defendants") lack of standing to exercise the purported copyright termination interest of deceased artist Eugene "Gene" Colan pursuant to 17 U.S.C. § 304(c). Defendants are Gene Colan's children from his second marriage. Gene Colan, however, also had two children from his first marriage—who would share equally in any termination interest belonging to their father. The Copyright Act dictates that a termination can only be effected by those possessing a *majority* of a deceased author's termination interest, and because Defendants possess no more than half of their father's purported termination interest, their termination notices are invalid.

### 1. Background

This case concerns the rights under U.S. copyright law to the contributions of artist Gene Colan to several Marvel comic book publications (the "Works"). Defendants served termination notices under Section 304 of the Copyright Act, purporting to terminate alleged grants of copyright in the Works from Gene Colan to Marvel. But Section 304 expressly excludes from its ambit "works made for hire." *See* 17 U.S.C. § 304(c). Works made for hire are those "made at the hiring party's 'instance and expense.'" *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 139-40 (2d Cir. 2013) (citation omitted). As the Second Circuit has explained, the Copyright Act deems the hiring party to be the author *ab initio* of a work made for hire. *Id.* at 137. Thus, "[t]he hired party, although the 'author' in the colloquial sense, therefore never owned the copyrights to assign"—meaning there is no grant to terminate. *Id.* (quotation marks and citation omitted).

Here, Gene Colan's contributions to the Works were indisputably done on a work-made-for-hire basis. *See, e.g.*, *id.* at 124, 143 (comic book artist Jack Kirby's contributions were works made for hire for Marvel); *In re Marvel Ent. Grp., Inc*., 254 B.R. 817, 834 (D. Del. 2000) (hereinafter, "*Wolfman*") (comic book writer Marv Wolfman's contributions "were made at Marvel's instance and expense and are, therefore, works made for hire"). Indeed, Gene Colan himself repeatedly confirmed that he understood that his contributions were done on a work-made-for-hire basis. Yet a decade after their father's death, Defendants dispute their father's own characterization of those same contributions.



Even leaving aside that no termination right attaches to Gene Colan's contributions, Defendants lack the requisite standing to exercise his purported termination right in the first place.

**2. Gene Colan had four children, only two of whom have served termination notices.**

Gene Colan had two children with his first wife, Sallee Greenberg: Jill Kubicki and Valerie Waldman.[1] Their marriage ended while the children were still young and Gene and Sallee each remarried. Sallee married Norman Brust, who, with Gene Colan's consent, adopted Jill and Valerie.[2] Gene married Adrienne Brickman, with whom he had two more children: Defendants Nanci Solo and Erik Colan. The four children did not grow up together, but Jill and Valerie's existence was no secret. Gene Colan himself told Nanci that he had two children—two girls—in his prior marriage.[3] Gene Colan also provided a family photo of Jill and Valerie from their early childhood[4] for inclusion in a book he characterized as detailing "[e]verything" about his life story.[5] And Gene Colan provided for all four of his children in his will.[6]

Nanci and Erik eventually met Jill and Valerie—and ultimately, Valerie's daughter Rachel.[7] When Gene Colan passed away in 2011, Nanci Solo petitioned to become the administrator of his estate. She was thus legally required to, and did, acknowledge her half-sisters as Gene Colan's surviving heirs. Nanci attested under oath that Gene Colan left behind *four* surviving children "who would inherit his[] estate": son Erik Colan and daughters Nanci Solo, Valerie Waldman, and Jill Kubicki.[8] Jill and Valerie also both submitted notarized waivers of citation and consent to the appointment of Nanci Solo as administrator of Gene Colan's estate, as "child[ren]" of Gene Colan.[9]

Defendants confirmed the same in their August 30 submission to this Court, identifying the "two children, Valerie (now deceased) and Jill, Gene Colan had with his first wife, Salle [sic]."[10] They further explained that, "[a]fter the couple's divorce decades ago, Salle [sic] remarried Norman Brust, who legally adopted Valerie and Jill in New York."[11] Defendants

---

[1] Ex. 1 at 4; Ex. 2 at 75:7-19, 78:9-13, 80:20-81:9, 159:4-160:9; Ex. 3 at 5, 11, 12. Some of the exhibits to this letter were previously marked as exhibits during depositions in this case. Any highlighting in such documents was applied for the depositions and is irrelevant to this letter.

[2] Ex. 1 at 4; Ex. 2 at 80:20-81:16, 159:4-160:9.

[3] Ex. 2 at 75:7-19.

[4] *See* Ex. 4 at 4; Ex. 2 at 85:21-86:5.

[5] Ex. 5 at 15:2-23.

[6] *See* Ex. 2 at 98:6-13 (Q: "Who were the beneficiaries in your father's will . . . ?" Nanci Solo: "My mother . . . , myself and my brother [Erik Colan] and then Valerie, her two children, . . . Jill[,] and my three children."). The will, however, was ultimately invalidated on a technicality. *See id.* at 97:9-98:5.

[7] Ex. 2 at 79:16-80:4, 94:7-16.

[8] Ex. 3 at 4-5.

[9] Ex. 3 at 11, 12.

[10] Ex. 1 at 4.

[11] *Id.*



argued that "[t]his legal adoption vitiated Valerie and Jill's status as Gene Colan's children,"[12] but as explained below, Defendants' legal conclusion is wrong—while the adoption terminated Gene Colan's parental rights, it did not terminate Valerie and Jill's intestacy rights.

3. **Whether a purported heir holds a termination interest under the copyright termination statute is determined by reference to state laws of intestacy.**

The Second Circuit held in *Stone v. Williams*, 970 F.2d 1043, 1061-62 (2d Cir. 1992) that the rights under Section 304 of the Copyright Act are to be determined by reference to state laws of intestacy—specifically, the law of the author's domicile at death. Gene Colan was a New York domiciliary at the time of his death,[13] so New York intestacy law governs. The dispositive question is thus whether Colan's adopted-out children could inherit from him if he died intestate.

4. **Jill Kubicki and Valerie Waldman remain entitled to inheritance and succession through Gene Colan notwithstanding their step-parent adoption by Norman Brust.**

Gene Colan's death in 2011 triggered the application of Domestic Relations Law section 117(1)(e)(2)(i), which provides:

> . . . [A]s to estates of persons dying after the thirty-first day of August, nineteen hundred eighty-seven, if:
> (1) the decedent is the adoptive child's birth grandparent or is a descendant of such grandparent, and
> (2) an adoptive parent (i) is married to the child's birth parent, (ii) is the child's birth grandparent, or (iii) is descended from such grandparent,
> the rights of an adoptive child to inheritance and succession from and through either birth parent shall not terminate upon the making of the order of adoption.

This statute applies to a step-parent adoption like that at issue here: (1) Gene Colan died in 2011,[14] long after this inheritance rule took effect; (2) Gene Colan is the descendant of Valerie and Jill's birth grandparent (*i.e.*, he is their birth grandparents' son), and (3) an adoptive parent (Norman) is married to the child's birth parent (Sallee). Therefore, the rights of Valerie and Jill, the adoptive children, "to inheritance and succession from and through either birth parent [did] not terminate upon the making of the order of adoption." *Id.; see also Matter of Adoption of Jennifer*, 142 Misc. 2d 912, 917 (N.Y. Fam. Ct. 1989) (Section 117(1)(e)(2)(i) "allows a child adopted by a stepparent to inherit from his or her biological father" irrespective of an adoption order that otherwise severed the traditional parent-child relationship).

Jill and Valerie accordingly remained entitled to inherit from Gene Colan's estate, notwithstanding their legal adoption by step-father Norman Brust. Indeed, Nanci Solo's *own* petition concerning the management of Gene Colan's estate—filed with the aid of an attorney—

---

[12] *Id.*

[13] Ex. 6 at 5 (RFA No. 6).

[14] Ex. 6 at 4-5 (RFA No. 5).



identified both Jill and Valerie as surviving heirs entitled to inherit from Gene Colan. And Jill and Valerie's continued "child" status for intestacy purposes carries over into copyright law.

### 5. The same logic extends to Rachel Waldman, daughter of the late Valerie Waldman.

Although Valerie Waldman is now deceased, she is survived by her daughter Rachel,[15] who steps into her mother's shoes. Because Valerie Waldman was Gene Colan's child within the meaning of Section 304 of the Copyright Act, *see supra* Section 4, Rachel Waldman is accordingly a "surviving child[] of a[] dead child" of Gene Colan—and thus entitled to any termination right her mother would have held. 17 U.S.C. § 304(c)(2)(B)-(C).[16]

### 6. Gene Colan's termination interest is thus held in equal parts by Nanci Solo, Erik Colan, Jill Kubicki, and Rachel Waldman, and it can only be exercised by a *majority* of them.

Each of Gene Colan's four biological children held one-fourth of his termination interest (if any)—and upon Valerie Waldman's passing, Rachel Waldman assumed her mother's share.[17] Defendants Nanci Solo and Erik Colan thus possess a combined 50% interest, but termination can only be exercised by those with *more* than 50% of that interest. 17 U.S.C. § 304(c)(1) (in the case of a deceased author, "termination of the grant may be effected . . . by the person or persons who . . . own and are entitled to exercise a total of *more than one-half* of that author's termination interest") (emphasis added); *see also Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 133 (2d Cir. 2013) (assuming that "at least three of the four Kirbys—'more than one-half'—must 'effect' termination of their father's assignment in order for any of them to realize their termination rights"); 3 Nimmer on Copyright § 11.03[A][2][b] (discussing the need for per stirpes majority of statutory heirs to join in exercise of termination under the Copyright Act).

Because Gene Colan has four heirs on equal footing, at least *three* must join in the decision to exercise a purported termination interest; two cannot. This standing deficiency, in and of itself, invalidates Defendants' termination notices.

\*   \*   \*

The Court should resolve this case on the threshold issue of standing, without which Defendants cannot lay claim to any of the copyright rights they seek. MCI thus prays for entry of judgment in its favor on the Complaint and Counterclaim alike.[18]

---

[15] *See* Ex. 6 at 5-6 (RFA No. 10).

[16] The same result would be true under the New York Domestic Relations Law. *See* N.Y. Dom. Rel. Law § 117(1)(f).

[17] Jill Kubicki, by contrast, is still alive. *See* Ex. 6 at 6 (RFA No. 11).

[18] Because Defendants' lack of standing is dispositive, the Court need not wade into the parties' broader work-made-for-hire dispute. MCI seeks an early adjudication on standing to conserve party and judicial resources, but if the motion is not granted, MCI anticipates filing for summary judgment on that subject and reserves all rights concerning a further motion for summary judgment on the merits.



Respectfully submitted,

By:   */s/ Daniel M. Petrocelli*

Daniel M. Petrocelli
of O'Melveny & Myers LLP
*for plaintiff and counterclaim-defendant*
*Marvel Characters, Inc.*