# EXHIBIT 1

# O'Melveny

O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

File Number:

August 30, 2022

**Daniel M. Petrocelli**
D: +1 310 246 6850
dpetrocelli@omm.com

The Honorable Taryn A. Merkl
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Marvel Characters, Inc. v. Solo et al.*, No. 1:21-cv-05316-DG-TAM

Dear Judge Merkl:

Plaintiff Marvel Characters, Inc. ("MCI") respectfully requests a pre-motion conference to discuss MCI's anticipated motion to compel. Defendants' refusal to produce responsive documents, much less commit to a date to complete their productions, necessitates the Court's intervention. MCI respectfully requests a consolidated pre-motion conference on both parties' pre-motion letters.

    **A.   MCI's Position**

While the 1976 Copyright Act gives authors the right to terminate grants of copyright under certain circumstances, works made for hire are not eligible for termination. *See* 17 U.S.C. § 304(c). Courts have uniformly held that a work is "made for hire" under the 1909 Copyright Act when it is made at the hiring party's "instance and expense." *See, e.g.*, *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 738 (S.D.N.Y. 2011), *aff'd in relevant part*, 726 F.3d 119 (2d Cir. 2013). "'Instance' refers to the extent to which the hiring party provided the impetus for, participated in, or had the power to supervise the creation of the work." *Kirby*, 726 F.3d at 139. Under the "expense" prong, "payment of a 'sum certain' suggests a work-for-hire arrangement." *Id*. at 140.

Applying this test, the Second Circuit affirmed summary judgment for Marvel against the attempted terminations by the heirs of Jack Kirby, who worked for Marvel in the 1950s and 1960s. *Id*. Similarly, the District of Delaware held that Marv Wolfman—another Marvel contributor who worked with Eugene J. Colan ("Colan") on many of the comics at issue here—worked on a work-made-for-hire basis. *See In re Marvel Ent. Grp.*, 254 B.R. 817, 834 (D. Del. 2000).

The facts here are essentially the same as those in *Kirby* and *Wolfman*. According to Colan, Marvel assigned him work, provided him with plots or synopses, edited his work, and paid him a fixed fee. *See, e.g.*, Ex. 1 at 1 (Colan describing how Lee "would call every month for more than 18 years [to] briefly outline a plot"); Exs. 2-5 (Colan detailing how Marvel editor Stan Lee gave Colan assignments); Ex. 6 ¶ 9 (Colan swearing under oath that Marvel "paid me on a per-page basis" and could "request[] that I change or redraw pages").[1] Moreover, Colan signed numerous contracts

---

[1] While MCI disagrees that it bears the burden to show that Colan's work was done at Marvel's instance and expense, MCI has searched extensively for such information.


EXHIBIT 60

affirming that his contributions were works made for hire.[2] Nonetheless, after his passing, two of his four children now—incorrectly—claim otherwise.

**Defendants Must Commit to a Date Certain to Complete their Productions.** In response to MCI's Requests for Production ("RFPs"), served back in February, Defendants agreed to produce a wide variety of documents. However, despite being obligated to do so and many requests from MCI, Defendants refuse to commit to a date to complete their productions. *See, e.g.*, Fed. R. Civ. P. 34(b)(2)(B) (production must be made when responses are served or "another reasonable time specified in the response"); *see also* Fed. R. Civ. P. 34(b)(2)(B) advisory committee's note (responses "should specify the beginning and end dates of the production"); *Fischer v. Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) ("[R]esponses [that] do not indicate when documents and ESI that defendants are producing will be produced" violate Rule 34). And, in the intervening six months, Defendants have produced just five documents—two birth certificates, a piece of artwork autographed by Stan Lee, and copies of two books. In their latest attempt to dodge MCI's timing request, Defendants tried to insist that MCI agree to a number of punitive conditions. *See* Ex. 7. Consistent with the Rules, Defendants must be ordered to produce their documents by a date certain, with no strings attached—especially in light of (1) the upcoming October 17 status conference, and (2) the need to complete depositions ahead of the November 18 fact discovery deadline. Anything less would reward Defendants' sustained refusal to comply with the Rules.

**Defendants Must Produce Relevant Documents.** A party challenging the adequacy of an adversary's collection efforts bears the burden to provide "concrete evidence pointing to the existence of missing documents." *Sidman v. Concord Arena Parking, LLC*, 2021 WL 1940255, at *2 (E.D.N.Y. May 11, 2021). MCI readily meets this burden.

*Defendants' Standing.* Under section 304(c), a grant of a copyright may be terminated by the author or, if deceased, by the person who owns and is entitled to exercise more than 50% of the author's termination interest. *See* 17 U.S.C. § 304(c)(1)-(2). If there is no widow or widower, "the author's surviving children, and the surviving children of any dead child of the author, own the author's entire termination interest . . . [which] is divided among them." *Id.* § 304(c)(2).

Colan is deceased, and his two children with his second wife served the purported termination notices. *See* Ex. 8. But Colan had two other children with his first wife. *See* Exs. 9-10. MCI understands that one of the children passed away but left a surviving child, and that the other is living. Thus, Defendants seemingly only own *50%* of Colan's purported termination interest and lack standing to serve termination notices, a position *endorsed* by Defendants' counsel in *Kirby*. *See* Ex. 11 at 21; *see also Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193, 202 (2d Cir. 2008).

MCI served RFP No. 30 on standing. *See* Ex. 12 at 39. After feigning ignorance with respect to this Request, Defendants later acknowledged that they understood it seeks "documents sufficient to show that Defendant is an owner of the termination interest in question and Defendant's ownership interest percentage" and agreed to produce all responsive documents. *Id.* at 40-41. Defendants, however, have produced only their birth certificates and have not produced any

---

[2] MCI does not submit these confidential agreements as exhibits but they are available at the Court's request.

O'Melveny

documents relating to their half siblings. Defendants' limited production thus suggests they are withholding evidence that would invalidate their purported termination notices.

***Colan's Work for Marvel***. Throughout his sixty-plus year career with Marvel, Colan *recorded* the conversations during which Lee provided Colan with assignments, with Defendants arguing these plots are "central" to this case. *Compare* Ex. 2 *with* Dkt. 35 at 3. Yet Defendants' search efforts make no mention of these recordings. *See* Ex. 13. In addition, aside from two books, Defendants have not produced a *single* document relating to Colan's work for Marvel. Erik Colan, however, acquired artwork from his father, which could, for example, illustrate how Marvel provided the impetus for and/or supervised Colan's work. *See* Ex. 14. Concerningly, Erik Colan sold some of this artwork, even *after* his family contacted counsel of record about legal representation. *Compare* Ex. 14 *with* Ex. 15. Possible spoliation aside, even if Erik Colan sold some artwork, it does not explain the absence of any Colan artwork within either of Defendants' productions.

***Colan's Agreements and Related Correspondence***. Defendants agreed to produce Colan's agreements with Marvel. *See, e.g.*, Ex. 12 at 9-10; 29-34. In these agreements, Colan repeatedly admitted that his contributions were "works made for hire." In addition, in 2008 correspondence, Colan explained how Stan Lee "gave [him his] first job" and gave him plots. *See* Ex. 1. Further still, Colan corresponded via email with Lee. *See* Ex. 16. But Defendants have not produced any of these documents. In fact, they have not produced *any* ESI at all.

\* \* \*

MCI thus seeks an order compelling Defendants to, within seven days, (a) produce all non-privileged documents that are responsive to MCI's RFPs; and (b) amend their interrogatory responses to confirm that all non-privileged, responsive documents have been produced.

**B.    Defendants' Position**

Marvel's retaliatory Letter is based on nothing more than misleading misrepresentations, false innuendo and unsupported speculation about documents Defendants *might* have. Marvel's recently concocted Letter was designed as a counterweight to deflect from the real discovery issues raised by Defendants' Pre-Conference Letter (Dkt. 35). Marvel's request for a conference with the Court should be denied until such time as Marvel has properly met and conferred with Defendants, as required.

**Marvel Failed to Meet and Confer with Defendants Prior to Serving Its Letter**

No pre-motion conference concerning Marvel's Letter is necessary, or even permitted, given that Marvel never met or conferred with Defendants regarding most of the contrived issues raised *for the first time* in its Letter. Per Your Honor's Individual Rules & Practices, "The parties must confer as required by Fed. R. Civ. P. 37(a)(1) prior to filing the letter, and *must describe their efforts to confer in the joint letter*." § 3(A) (emphasis added). It is telling that Marvel has done neither, nor has it attached a single conferral letter as an exhibit. As shown below, many of the exaggerated topics in Marvel's Letter are non-issues or are minor items over which there is no dispute. Thus many, if not all, issues can readily be resolved without the need for judicial intervention.

3

O'Melveny

**Defendants Have Diligently Searched for Documents**

Defendants' searches for relevant and responsive documents have been extensive. Since the time Defendants expected that they would exercise their termination rights in the Works, they began searching for and collecting documents which might be relevant to that exercise. Ex. 13 Colan Responses at 10, Solo Responses at 10. When Defendants received Marvel's RFPs, their search efforts continued. Ex. 13 Colan Responses at 15, Solo Responses at 15. Defendants informed Marvel that their production of documents would be substantially completed on or before August 29, 2022. Ex. 17 at 9; Ex. 18 at 1-2; Ex. 19 at 1.

To locate relevant, responsive documents, Nanci Solo searched her entire house, including her basement and detached garage where she keeps storage boxes, two large containers where she keeps files previously kept in a five-drawer vertical file cabinet, the files contained in two two-drawer vertical file cabinets, her closets and shelves, and searched her computer files. Ex. 13 Solo Responses at 15. She has no offsite storage facility. *Id*. Erik Colan searched his entire one-room studio apartment, including all cabinets, drawers, boxes, closets and selves, and searched his computer files for any responsive documents. Ex. 13 Colan Responses at 15. He has no offsite storage facility. *Id*. Defendants produced the relevant, responsive, and non-privileged documents uncovered by their diligent searches.

**Marvel's Letter Knowingly Misleads with Misrepresentations, Speculation and Innuendo**

Marvel's Letter is contrived to mislead the Court. For example, Marvel misrepresents that Defendants did not provide an end date for their production. Not so. As stated above, Defendants have repeatedly informed Marvel, including prior to its Letter, that their productions would be substantially completed by August 29, 2022. Ex. 17 at 9; Ex. 18 at 1-2; Ex. 19 at 1. Marvel's claims to the contrary are knowingly false.

Marvel's Exhibit 7 is a knowingly incomplete copy of the communications between counsels from August 3-12, 2022, days before Marvel's submission of its Letter. *Compare* Ex. 7 *with* Ex. 17. Marvel intentionally omitted the portions of Defendants' counsel's communications which corrected, in detail, the numerous misstatements and factual inaccuracies presented by Marvel's counsel. Ex. 17 at 14-18.

Marvel's Letter is little more than a series of strained inferences and guesswork. For example, as to standing, Marvel admits Defendants produced their birth certificates, demonstrating that they are indeed Gene Colan's children, entitled to exercise his termination right as to the Works. 17 U.S.C. § 304(c)(2). Defendants were thus surprised by Marvel's assertions in its Letter regarding two children, Valerie (now deceased) and Jill, Gene Colan had with his first wife, Salle. After the couple's divorce decades ago, Salle remarried Norman Brust, who legally adopted Valerie and Jill in New York. This legal adoption vitiated Valerie and Jill's status as Gene Colan's children and with it, any interest under the Act's termination provisions. Defendants are the only legal children of Gene Colan. If Marvel had legitimate questions about this family history, it should have sent an interrogatory or at a minimum, raised this issue during the parties' meet-and-confer discussions. Had Marvel done so, Defendants could have swiftly put this non-issue to rest.

O'Melveny

Next, Marvel works hard to manufacture inferences that Defendants are withholding relevant documents concerning Gene Colan's Works. In good faith, Defendants responded to each of Marvel's RFPs by agreeing to produce all non-privileged, responsive documents uncovered by a reasonably diligent search for same. Ex. 12. Marvel intentionally distorts this as a breached promise to produce ascertained documents (e.g., "agreements") when in fact, Defendants' diligent searches simply revealed none. Marvel likewise distorts alleged recordings of Stan Lee. *First*, as Marvel knows, Gene Colan testified in his 1999 deposition, regarding the works he sold to Marvel, that "I kept nothing really. I have nothing to show, no documents, I had no contracts, nothing." Ex. 20 at 11:17-19.[3] Ignoring this, Marvel now accuses his children of withholding documents their father swore he did not have two decades ago. *Second*, Marvel cites Exhibit 14 as a basis to accuse Erik Colan of selling off potential artwork evidence. Not only did Marvel never raise this concern with Defendants previously, but Exhibit 14 does not list *any* materials relevant to this case. Erik Colan's auctioning of a 2001 replica comic book cover or copies of autographed books *which Marvel published* have little to do with Marvel's work-for-hire defense. *See* Ex. 14 at 3. *Third*, Marvel misleadingly *omits* that Erik Colan's mother contacted Defendants' counsel *13 years ago* in 2009 (Ex. 15) and that this had nothing to do with this case or counsel's current representation of Defendants.

Marvel next attempts to forge inferences about documents that Defendants *could* have based on the documents that Marvel has produced. As Marvel knows, the parties are situated very differently and one party's possession of a document means nothing about the documents possessed by the other. Marvel is a multibillion-dollar, international corporation with sophisticated document maintenance platforms on which their legal, finance, tax, human resources, and publishing departments purportedly maintain documents. Ex. 21 at 13-23. Marvel also maintains numerous hard copy storage repositories and has outside legal counsel that retained documents dating back prior to the 1960s. *Id.* at 16, 21-23.

Defendants, however, like Gene Colan, are individuals without significant means, without document retention procedures and policies, or standardized ESI platforms. Defendants have only their homes, filing cabinets, and personal computers. Ex. 13 Colan Responses at 15, Solo Responses at 15. Furthermore, they inherited no more documents than Gene Colan had and, as referenced above, he testified to retaining very little. Ex. 20 at 11:17-19. It would be unreasonable to expect that Defendants would possess many (or any) communications and agreements that Gene Colan may have had with Marvel decades ago. The documents Marvel produced create no inference about those in Defendants' possession or control. Defendants have diligently searched for and produced their responsive documents, and literally cannot produce documents they do not possess or control. Marvel's unwarranted and improper Letter does nothing to change this.

Should this Court nonetheless decide to schedule a pre-motion conference to discuss Marvel's Letter, Defendants respectfully request the Court hear Marvel's Letter during the September 16 conference for Defendants' Letter.

---

[3] Defendants will make the full deposition transcript available should the Court request it.

O'Melveny

_____

Respectfully submitted,

/s/ Daniel M. Petrocelli

Daniel M. Petrocelli
of O'Melveny & Myers LLP
*for plaintiff and counterclaim-defendant
Marvel Characters, Inc.*

/s/ Marc Toberoff

Marc Toberoff
of Toberoff and Associates, P.C.
*for defendants and counterclaimants
Erik Colan and Nanci Solo*

6